EDWARD J. McLEROY, plaintiff in error, vs. ISAAC McLEROY, defendant in error.

*When there is an adequate remedy at law, equity will not interfere.*

Equity, from Pike county.    Decided by Judge CABINESS, October Term, 1857.

Edward J. McLeroy, as guardian of Charles W. McLeroy, (the minor child of James McLeroy and Eliza W. McLeroy, formerly Eliza W. Gilden) filed his bill in equity for an injunction, under the following circumstances: The said Eliza McLeroy, then Eliza Gilden, was, in 1850, possessed of two negroes, which she had received from the estate of her mother, Mary Gilden, under and by virtue of the will of her said mother, the 4th item of which was as follows: " I give and bequeath to my daughter, Eliza W. Gilden, and to the heirs of her body, a negro boy by the name of Demps, about ten years old, also my boy Hanson, eight years old." In 1850 the said Eliza Gilden intermarried with James McLeroy, and in the following year died.    The complainant stated these facts in his bill, and alleged that he was informed and believed that in consideration of said marriage, it was agreed by the said James McLeroy, that the said two negroes should continue and remain the property of said Eliza W. in trust for the children of the marriage.    That Charles W., the complainant's ward, was the issue of the marriage.    That

the said James McLeroy subsequently intermarried with Mary White, and in 1856, died intestate. That the said Eliza Gilden received the said two negroes not as her absolute property, but to her absolute use only, in the event of her having a child or children, and that the fee in said negroes was to vest in said children; and up to the time of the birth of the said Charles W., they were so considered; and afterwards the said James McLeroy and the said Eliza continued to treat them as the property of the said Charles W.; and that at the time of the second marriage of the said James McLeroy, it was well understood, by the said Mary White, to whom they belonged, and that during the lifetime of the said James, she so treated and spoke of them. That Hanson, one of the said negroes, had died. That letters of administration on the estate of the said James McLeroy had been granted to Isaac McLeroy, and that the said Isaac had taken possession of all the property of the deceased, and at the same time took possession of the said negro Demps, and did, in December, 1856, offer the said negro boy for sale under an order from the Court of Ordinary, as the property of the said James McLeroy. That complainant interposed a claim to the said negro, but not being ready for trial at the Inferior Court, confessed judgment and entered an appeal to the Superior Court, and said appeal was then pending. That under the strict rules of evidence in a Court of common law, complainant would not be able to prove all the aforesaid facts and circumstances, and had not an adequate remedy at common law. Complainant therefore prayed that the said Isaac McLeroy might be ordered to deliver up to him, as guardian, the said negro boy, Demps, and account for his hire from the time complainant demanded the same from him, and for an injunction restraining the said Isaac from trying the said claim cause at law.

Complainant applied to the Judge in the Court below for an injunction, which was refused. And complainant excepted.

GREEN, DANIEL, and DISMUKE, for plaintiff in error.

J. Q. A. ALFORD, *contra.*

*By the Court.*—BENNING, J. delivering the opinion.

The bill alleges, that it was agreed by and between James McLeroy and Eliza W. Gilden, in contemplation of intermarriage, that she should hold the two negroes for the use of the children of the marriage; that Charles W. McLeroy was the only child of the marriage; and that, Jas. McLeroy, after the marriage and the birth of Charles W., always treated the two negroes as the property of Charles W.

Whatever title to the negro in dispute, this gave to Charles W., may be as well asserted at law, on the trial of the claim, as it can be, in equity. This is plain.

There is no need, then, for the bill, and, therefore, no equity in the bill.

I remark, however, that whether the agreement gave any title to the negro to Charles W. or not, depends, I suppose, upon whether the agreement was in *writing* or not; or, if it was not in writing, upon whether it was *executed, carried out,* or not, by the father, James McLeroy, in his lifetime. Whether his conduct in respect to the negroes, amounted to an *execution, a carrying out,* of the agreement, is another question.

Judgment affirmed.