MOCK *v.* NEFFLER, administrator, *et al.*

GEORGE, J. Ethel Marie Mock, on May 5, 1917, filed a petition in which the following allegations were made: Petitioner was born August 3, 1888. On August 20, 1888, petitioner's mother gave her to Eliza A. Charlton, of Chatham county, Georgia, under a parol agreement between the mother and Eliza A. Charlton that Eliza A. Charlton would educate and adopt petitioner as her child with the right of inheritance. The contract was fully performed by petitioner and her mother; and Eliza A. Charlton, to the date of her death (which occurred in Chicago, Ill., on October 20, 1916, while she was temporarily absent from the State), recognized the contract and the relation created thereby. On

April 6, 1907, petitioner married. Prior thereto she had earned by her labor, and turned over to Eliza A. Charlton, about $1974, with the understanding that the money would be invested in real estate, and that petitioner would inherit it at the death of Eliza A. Charlton. She believes that this money was in fact invested in certain real estate described in the petition. About a year after her marriage, Eliza A. Charlton persuaded her and her husband to move into the home of Eliza A. Charlton, so that petitioner could care for her. Petitioner cared for her and "boarded" her foster mother for about nine years, and until six months before the death of Eliza A. Charlton. The value of the services rendered to Eliza A. Charlton is $3240. During the time these services were being performed several children were born to petitioner and her husband. The foster mother recognized them as her grandchildren. The close and affectionate relation existing between petitioner and her foster mother was never broken. Claiming to be the husband of Eliza A. Charlton, C. C. Neffler was granted temporary letters of administration on her estate. Eliza A. Charlton in fact never was married, and died without issue. C. C. Neffler made application for permanent letters of administration, to which objections were filed by petitioner and certain named persons who alleged themselves to be the nearest blood relatives and heirs at law of the decedent. The present petition was brought against C. C. Neffler and the said relatives. The material prayers were: (1) that all the property, real and personal, of Eliza A. Charlton be decreed to belong to petitioner under the adoption agreement made between petitioner's mother and Eliza A. Charlton; (2) that if the adoption agreement can not be specifically performed, a resulting trust be decreed in favor of petitioner, vesting the title to the realty in her; (3) that if neither specific performance nor a resulting trust can be decreed, petitioner recover $1974 cash turned over to Eliza A. Charlton, and $3240 for support furnished and services rendered by petitioner to her. By an amendment dated July 28, 1917, W. H. Wade, who had been appointed permanent administrator of the estate of Eliza A. Charlton, was made a party defendant; and alleged that petitioner's mother "was a widow lady named Mrs. Michael," and "that her mother's husband was not in life at the time of petitioner's birth." By a subsequent amendment it was alleged, that "petitioner's mother's full name was Mrs. Clara Michael, and that the name of petitioner's mother's husband was Lonnie Michael, who was dead at the time petitioner's mother gave your petitioner to Eliza A. Charlton."

*Held:*

1. Properly construed, the allegations of the petition do not show a right of disposition in the mother of petitioner. It is not alleged that the petitioner was an illegitimate child, or that her father was dead, or that he had lost his parental control, or that he had ratified or acquiesced in the contract made by petitioner's mother with Eliza A. Charlton. The first essential of a contract for the adoption of a child, where no statutory adoption exists, is that it be made between persons competent to contract, and be based upon sufficient legal consideration. Fugate *v.* Allen, 119 Mo. App. 183 (3) (95 S. W. 980); Civil Code, § 3021.

2. The essentials of a resulting trust are not alleged, there being no specific allegation that the petitioner's earnings prior to her marriage actually constituted the purchase-money, or any part thereof, of the real estate referred to. Civil Code, § 3739. Had the allegations been sufficient in this respect, the right of recovery was in her father if in life, and not in her.

3. The earnings of a minor child belong to the father, unless the child has been manumitted by the father. *Smith* v. *Smith*, 112 *Ga.* 351 (3), 352 (37 S. E. 407); Civil Code, § 3021. In the absence of consent or agreement to the contrary, express or implied, the earnings of the wife belong to her husband. *Georgia Railroad Co.* v. *Tice*, 124 *Ga.* 459 (5), 466 (52 S. E. 916, 4 Ann. Cas. 200); *Cotter* v. *Gazaway*, 141 *Ga.* 534 (81 S. E. 879). In so far as the petitioner sought to recover upon a quantum meruit, the right of action was in her father for the money earned by her prior to her marriage, and in her husband for the value of the support furnished and the services rendered to the decedent after the marriage of the petitioner.

4. The demurrer, which raised the foregoing objections to the petition, was properly sustained.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent, and Atkinson, J., disqualified.*

No. 600.　April 11, 1918.

Equitable petition. Before Judge Meldrim. Chatham superior court. August 21, 1917.

*E. S. Fuller* and *Oliver & Oliver*, for plaintiff.

*David C. Barrow, Charlton G. Ogburn*, and *Osborne, Lawrence & Abrahams*, for defendants.