BOLES, administratrix, *v.* EDDLEMAN.

No. 12960. DECEMBER 18, 1939.

*McElreath, Scott, Duckworth & DuVall,* for plaintiff in error. *Marion Smith* and *E. D. Smith Jr.,* contra.

ATKINSON, Presiding Justice. ▮ An alleged oral contract between the mother of a female child and the man the mother intended to marry provided that the man should take the child "into his house, treat her, care for her, educate her, raise her, support her, and in every way regard her as his own child during his lifetime." The contract further provided that the man would in his will treat the child the same as any children he might have, and after his death the child should be treated "equally with the children" of the man "and share equally with any such children in the distribution of his estate." At the time of the contract the parents of the child had been divorced, and the child left in the custody of the mother. *Held:*

1. In a suit by the child against the administratrix of the estate left by the man at his death, to declare a "virtual adoption" of the child on the basis of full performance of the contract by

the mother and the child, seeking a decree for a child's part in the estate of the decedent, it is essential that it should affirmatively appear either that the child was an illegitimate, or had been abandoned by her father, or·that her father was dead at the time of the contract, or that the father had ratified the contract. *Rucker* v. *Moore,* 186 *Ga.* 747 (199 S. E. 106). Where such essentials do not affirmatively appear in the petition, it fails to set forth a cause of action, and is subject to dismissal on general demurrer. *Mock* v. *Neffler,* 148 *Ga.* 25 (95 S. E. 673).

*(a)* The fact that the mother and the father of the child had been divorced and the child left in the custody of the mother would not operate to change the rule above stated. *Glendinning* v. *Mc-Comas,* 188 *Ga.* 345 (3 S. E. 2d, 562).

*(b)* For the reasons first above stated, the first count failed to allege a cause of action, and the judge erred in overruling the demurrer to that count.

*(c)* The case differs from *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.)_ 773), where it appeared that the father had abandoned the child; *Lansdell* v. *Lansdell,* 144 *Ga.* 571 (87 S. E. 782), where it appeared that the father of the child made the agreement; *Richardson* v. *Cade,* 150 *Ga.* 535 (104 S. E. 207), where the child was an illegitimate; *Elrod* v. *Sutton,* 174 *Ga.* 900 (164 S. E. 682), where the father of the child was dead; *Chamblee* v. *Wayman,* 167 *Ga.* 821 (146 S. E. 851), where the contract was made by the father of the child; *Columbus Bank & Trust Co.* v. *Jones,* 176 *Ga.* 620 (168 S. E. 561), where the contract was made by both parents; *Fussell* v. *Daniels,* 179 *Ga.* 462 (176 S. E. 369), where the contract was made by the father of the child.

■ In the second count it was alleged that the mother, as agent for the child and for her protection and benefit, entered with the ·man into a contract whereby, in consideration of the fact that she would marry him, and that the child should live with him "and treat him as her own father and accord him the love, respect, and affection that would be accorded her own father," the man "agreed that he would at all times during his life treat" the child "as his own daughter, and love her, rear her, care for her, educate her, and in all respects treat her as his own daughter, and further that at his death he would provide for her equally upon the same basis

as provision should be made for his own children, and that she should share equally in his estate with his own children." It was further alleged that the contract was fully performed on the part both of the mother and the child, and that the child on becoming of age ratified the contract; that after the child became of age the man ratified the contract, and stated to her that he considered her as his own child and expected her at his death to share equally in his estate with his own children, and that he never desired to make any distinction between her and his own children during his lifetime or after his death. It was further alleged that the administratrix was administering the estate without regard to the rights of the child under the contract, and would distribute the estate to the children of the man. The prayers were for a decree of specific performance and injunction, and that the child be awarded an equal share with the shares of the children. In an amendment it was alleged that "the consideration of the agreement with plaintiff's mother and the deceased was both the marriage as heretofore alleged and the agreement that plaintiff's mother would bring the plaintiff into deceased's family to be his daughter and a member of his family and to act towards him as such carrying out the duties of a daughter." Construing the allegations most strongly against the pleader, they show an agreement by the decedent to treat the plaintiff in the same manner that he would treat his natural children either by will or deed, or other affirmative action, as distinguished from inaction regarding distribution of his estate; but since it does not appear that the decedent agreed to leave any definite portion of his estate to any child, and since he was not required by law to do so, but might not only disinherit each of his children, but might bequeath different amounts to them, thus leaving it uncertain as to what portion or proportion each should receive, if anything, the petition failed to show a sufficiently definite and certain agreement to leave any portion of his estate to the plaintiff, and for this reason was subject to general demurrer.

■ The judge erred in overruling the general demurrer to the first and second counts as amended.

*Judgment reversed. All the Justices concur.*